RECEIVED IN THE OFFICE OF
CATHERINE C. BLAKE
MAR 2    003
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED

2003 MAR 31  A 10: 49

E. CARWILE LEROY, JR., et al.,

   Plaintiffs,

Civil Action No. CCB 02 CV3148

THE RICHARDS GROUP
OF WASHINGTON LP,

   Defendants

### CONSENT ORDER

Upon the express consent of all parties hereto, it is, this 28th day of _March_, 2003, by the United States District Court for the District of Maryland,

  ORDERED, that the Defendant shall make the mailboxes in the Wellfleet Mews development accessible. This will involve relocation of the individual mailbox clusters to locations where residents may travel over an accessible path of travel from their residences to the mailbox location. Once at the mailboxes, wheelchair users will not be prevented (by height constraints or other barriers) from accessing their mailboxes. In addition, the Defendant shall relocate and make accessible the mailbox cluster which serves the Sales Office/Model Unit for Wellfleet Mews, which may or may not be located within the Wellfleet Mews complex; and it is further

  ORDERED, that the Defendant shall make its Sales Office accessible. Until April 18, 2003, sales operations will continue from two locations, but during this time the accessible portion of the office (operated from a "C" model unit) will be open, staffed and operational during the time that any sales office is open with respect to the Wellfleet Mews development. Subsequently, the Defendant shall consolidate sales operations into a single model unit which will be accessible. The Defendant shall have the capacity to conduct all sales-related activities with customers in an accessible environment within this consolidated Sales Office, which will be accessible under the Americans with Disabilities Act, except that the shower/bathing facilities are acceptable if they meet the requirements of the Fair Housing Act, and the toilet grab bars must be installed and meet the dimensional standards of the Fair Housing Act; and it is further

  ORDERED, that all dwelling units at Wellfleet Mews that are not exempt from the design and construction requirements of the Fair Housing Act shall have an accessible path of travel between the primary entrance to the dwelling and the storage unit accompanying that dwelling unit. The storage unit shall have a usable door, as that term is defined in the Fair Housing Act Design Manual. In referring to non-exempt dwelling units in this paragraph, the

parties more specifically mean all "C" and "F" units in the Wellfleet Mews development; and it is further

ORDERED, that with respect to "F" units in Buildings 1 and 3, the Defendant shall construct ramps to the primary entrances such that these entrances are accessible. Accessibility provisions noted herein which refer to Wellfleet Mews dwelling units will be determined and accomplished under the regulations implementing the Fair Housing Act and under the Fair Housing Act Design Manual; and it is further

ORDERED, that with respect to "F" units in Buildings 2 and 4, the Defendant shall make every reasonable effort to construct ramps to the primary entrances of these units such that these entrances become accessible. To the extent that the Defendant concludes, after best efforts, that construction of such ramps is not feasible, then Defendant agrees to consult with Plaintiffs' design consultant and to carefully consider his suggestions and design proposals with respect to ramps. In this regard, Defendant shall be obligated to compensate Plaintiffs' design consultant for up to twenty hours consultation service at the rate of $150.00 per hour. Should Defendant remain convinced, after the above, that ramps are not a feasible solution, then Defendant shall install platform lifts such that the primary entrances to these units become accessible. Should lifts be installed, Defendant agrees that in its capacity as the Homeowners' Association that it will provide for the regular and appropriate maintenance and replacement of these lifts as necessary due to age, wear and tear. It is contemplated that any such lifts would be installed as "limited common elements" within this development, with the further understanding that the Homeowners' Association shall bear the financial burden of the above-referenced maintenance and replacement. With respect to any unit where a lift is installed, Defendant also agrees to construct an accessible path of travel from the auto parking area for the relevant building to the rear entrance of such unit and render such rear entrance accessible; and it is further

ORDERED, that with respect to Buildings 1, 2, 3 and 4, the Defendant will ensure that all "C" units have accessible primary entrances; and it is further

ORDERED, that all remaining dwelling units to be constructed by Defendant within the Wellfleet Mews development and which are not exempt from the design and construction requirements of the Fair Housing Act shall be constructed in such a manner as to be accessible through the primary entrance and shall otherwise be compliant with the requirements of the Fair Housing Act, with specific reference to mailboxes and storage units (as set forth herein); and it is further

ORDERED, that Defendant shall warrant that bathrooms in non-exempt units within the Wellfleet Mews development are FHA compliant, including 32" width for all bathroom doors, and accessible features for Specification B bathrooms, as set forth at pages 7.34 and 7.35 of the Fair Housing Design Manual; and it is further

ORDERED, that the Defendant promises Plaintiffs that in the future Defendant will design and construct all dwelling units which are not exempt from the design and construction requirements of the Fair Housing Act in such a manner as to comply with those requirements, with specific reference to accessible primary entrances, accessible mailboxes, and accessible

storage units. In addition, Defendant promises that its Sales Offices will be accessible within the terms of the Americans with Disabilities Act. These promises will extend to all relevant residential development projects within Maryland. Further, between now and December 19, 2005 (three years from the date of this agreement), the Defendant agrees that, in relation to its planning, design and construction of dwelling units which are not exempt from the design and construction requirements of the Fair Housing Act and in relation to its planning, design and construction of any commercial units that are governed by the Americans with Disabilities Act, it will, at such time as any of its public document filings become public, produce to the Plaintiffs copies of those filings to the extent they reveal a subdivision plan, exterior elevation of planned/designed buildings, and/or floor plans of such units; and it is further

ORDERED, that on or before February 2, 2003, the Defendant shall issue a single check in full settlement, as set forth in a letter dated December 19, 2002, from this Court to counsel for the parties, which check shall be payable to "Beth Pepper, Esq., Trust Account, as Attorney for (the names of the three Plaintiffs)." This check will be held in escrow until Plaintiffs execute and deliver to the Defendant a release of all claims, filed or unfiled, relating to alleged violations, known or unknown, asserted or unasserted, of the Fair Housing Act and/or the Americans with Disabilities Act at the residential development known as Wellfleet Mews, and with respect to the sales facilities that relate to such development. Once the relevant releases are accepted by Defendant, Ms. Pepper may disperse the settlement funds. This is a global settlement in that it resolves all alleged violations, known or unknown, asserted or unasserted, of the Fair Housing Act and/or Americans with Disabilities Act, arising under this case number; and it is further

ORDERED, that the Defendant shall begin construction work necessary to consolidate the Sales Office into a single location on or before February 17, 2003, and shall have accomplished the consolidation on or before April 18, 2003. With respect to the mailbox modifications referred to above, that work will be accomplished on or before February 17, 2003. With respect to the construction of ramps, and with respect to modifications necessary to make storage sheds accessible, this work will be accomplished on or before April 18, 2003. With respect to Buildings 2, 3 and 4 only, the ramp/lift and shed work, and all accessible pathway work, will be accomplished on or before June 16, 2003. Acts of God will result in appropriate extensions of these construction deadlines; and it is further

ORDERED, that the amount of funds which will be paid by the Defendant to the Plaintiffs will be kept confidential and may be revealed by Plaintiffs only to their spouses, if any, and to their tax, financial and legal advisors. The Plaintiffs and their counsel are free to reveal that funds were paid by the Defendant to the Plaintiffs as part of the settlement of this case -- just not any information relating to the amount. Otherwise, there are no confidential provisions in this Consent Order. The parties acknowledge that the amount of money to be paid by the Defendant to the Plaintiffs is to be setout in a separate, confidential settlement agreement, the only terms of which are that the case has been settled on the terms set out in this Consent Order and the amount of the referenced payment. The parties further agree that they will make a bona fide effort to compose (and then issue) a joint statement announcing the settlement of this case. Furthermore, the parties acknowledge that this Consent Order is not an admission of the validity of Plaintiff's claims, and is entered into solely for the purposes of settlement; and it is further

DC:209715.2

ORDERED, that the term of this Consent Order shall be three years from December 19, 2002; and, it is further

ORDERED, that each party will pay its own fees and costs, including any attorney's fees.

_____
Honorable Catherine C. Blake
United States District Judge
United States District Court for
The District of Maryland

_____
Honorable James K. Bredar
United States Magistrate Judge
United States District Court for
The District of Maryland

**CONSENTED**

Plaintiffs:

_____
E. Carwile Leroy, Jr.

_____
Andrea Buonincontro

Baltimore Neighborhoods, Inc.

_____
By:

Defendant:

The Richards Group of Washington

_____
By:

**Copy to:**

| Plaintiffs' counsel: | Defendant's counsel: |
|---|---|
| Beth Pepper<br>201 N. Charles Street, Suite 700<br>Baltimore, MD 21201<br>(410) 752-2744 | Gregory J. Swain<br>2661 Riva Road, Ste. 410A<br>Annapolis, MD 21401<br>(410) 570-7111 |
| Julie R. Rubin<br>Astrachan, Gunst, Thomas & Ahn<br>20 S. Charles Street, 6th Floor<br>Baltimore, MD 21201<br>(410) 783-3550 | Carolyn Doppelt Gray<br>Epstein, Becker & Green, P.C.<br>1227 25th Street, N.W.<br>Washington, D.C. 20037<br>(202) 861-1818 |
| Andrew D. Levy<br>Brown, Goldstein & Levy<br>120 E. Baltimore Street, Ste. 1700<br>Baltimore, MD 21202<br>(410) 962-1020 | Michael B. Lehrhoff<br>Epstein, Becker & Green, P.C.<br>1227 25th Street, NW<br>Washington, D.C. 20037<br>(202) 861-1389 |

DC:209715.2

5